IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-1340-NRN

E.M., represented by his mother and next friend,
L.M.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff E.M.[1] was not disabled for purposes of the Social Security Act. AR[2] 18–19. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #9.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkts. ##8, and 8-1 through 8-8.

evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

Plaintiff is under the age of 18. A child is considered "disabled" for the purposes of the Social Security Act if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

Agency regulations outline a three-step sequential evaluation process that an administrative law judge must follow when determining whether a child is disabled. *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). The ALJ must determine, in order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since July 31, 2019, the date the application was filed. AR 11.

At the second step of the Commissioner's of the sequential evaluation, the ALJ found that Plaintiff has the severe impairments of personality disorder, conduct disorder, attention-deficit hyperactivity disorder (ADHD), and an intermittent explosive disorder. AR 11.

However, the ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments in the regulations. AR 11–12. "In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, 'medically equals, or functionally equals the listings.'" *Briggs*, 248 F.3d at 1237 (footnote omitted).

Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a). A marked limitation is one that

3

interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Secretary] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The ALJ must consider all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. § 416.926a(a)(1)–(3). The ALJ also considers how a child functions in his activities "in terms of six domains": "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id*. § 416.926a(b)(1)(i)-(vi). "Domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* § 416.926a(b)(1).

The ALJ found that Plaintiff had a less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; a marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, less than a marked limitation in the ability to care for himself, and no limitation in health and physical well-being. AR 12. Because the ALJ found at least marked limitations in only one domain of functioning, the ALJ concluded that Plaintiff was not disabled. In large part, the ALJ concluded that Plaintiff's limitations were caused by intentional lack of effort, not lack of ability. AR 12–18.

Plaintiff argues that the ALJ erred in reaching this decision. Specifically, Plaintiff argues that the ALJ erred by relying on Dr. Leidal's opinion but failing to address the

4

"vast difference" between Dr. Leidal's limitations and the ALJ's own limitations. And, if the ALJ had not erred, he would have found that Plaintiff's disorders to meet the criteria to be found disabled according to Listings 112.08 (personality and impulse-control disorders) and 112.11 (neurodevelopmental disorders, including ADHD). Plaintiff further argues that the ALJ incorrectly reasoned that Plaintiff's "lack of effort" discounted claims of disability, when, in fact, lack of effort is a symptom of Plaintiff's impairment.

## Analysis

### I. The ALJ properly evaluated Plaintiff's lack of effort.

Plaintiff first argues that the ALJ erred by considering Plaintiff's "reduced effort" or "lack of effort" discounted claims of disability, when, in fact, reduced effort is a recognized symptom of Plaintiff's impairment. The Court disagrees with Plaintiff, and finds that the ALJ followed the relevant regulations and his findings are supported by substantial evidence.

The ALJ's conclusion that the record evidence failed to establish that Plaintiff's impairments met or medically equaled a listed impairment is supported by substantial evidence. Plaintiff's impairments of personality disorder; conduct disorder, and intermittent explosive disorder is evaluated under the Commissioner's Listing of Impairments at 12.08. What constitutes ADHD is set forth in Listing 112.11.

To be considered disabled under the criteria in Listing 112.08, Plaintiff must satisfy the criteria listed in Paragraphs A and B, which include:

A. Medical documentation of a pervasive pattern of one or more of the following:

  1. Distrust and suspiciousness of others;

  2. Detachment from social relationships;

5

    3. Disregard for and violation of the rights of others;

    4. Instability of interpersonal relationships;

    5. Excessive emotionality and attention seeking;

    6. Feelings of inadequacy;

    7. Excessive need to be taken care of;

    8. Preoccupation with perfectionism and orderliness; or

    9. Recurrent, impulsive, aggressive behavioral outbursts.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

    1. Understand, remember, or apply information (see 112.00E1).

    2. Interact with others (see 112.00E2).

    3. Concentrate, persist, or maintain pace (see 112.00E3).

    4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1 (pt. B)

To be considered disabled under the criteria in Listing 112.11, Plaintiff must satisfy the criteria listed in Paragraphs A and B, which include:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

    1. One or both of the following:

        a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

        b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

    2. Significant difficulties learning and using academic skills; or

    3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

    1. Understand, remember, or apply information (see 112.00E1).

    2. Interact with others (see 112.00E2).

    3. Concentrate, persist, or maintain pace (see 112.00E3).

    4. Adapt or manage oneself (see 112.00E4).

*Id.*

Plaintiff argues that Paragraph A. of Listing 112.11 identifies "[f]requent distractibility, difficulty sustaining attention, and difficulty organizing tasks;" as a symptom of ADHD. *Id.* And Paragraph B of the same Listing, as well as Listing 12.08, identifies a limitation in the ability to "concentrate, persist, or maintain pace" as a symptom of mental disorders, including ADHD. *Id.* Further, the Social Security Administration provides examples to determine whether or not an individual is able to concentrate, persist, or maintain pace, and those examples include:

> [I]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id*. Plaintiff argues that, colloquially, these symptoms are the same as lack of effort, so Plaintiff is, in fact, disabled.

7

The pronouncement, without any citation to case law, that such examples are the colloquial equivalent of "lack of effort," is insufficient to overturn the ALJ's decision. Moreover, it is irrelevant that Paragraph A of Listing 112.11 references frequent distractibility. There seems to be no dispute that Plaintiff is frequently distracted and does suffer from severe ADHD and personality disorders. To be found disabled, however, requires either meeting the listing by meeting the requirements of Paragraph A and at least two marked limitations in the Paragraph B categories, or a finding of functional equivalence, which requires a marked limitation in at least two of the six domains of function. Here, no medical expert opined to such limitations.[3]

Further, Plaintiff cites no medical evidence supporting his claim that the lack of effort was *caused* by Plaintiff's medical impairments. It is Plaintiff's burden to prove that his issues are caused by medical impairments. It is not for the ALJ to prove they were not. *See* 20 C.F.R. § 416.908 ("Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statements of symptoms. . . ."); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are . . . disabled."); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (in a Social Security disability case, the claimant bears the burden to prove disability).

---

[3] Plaintiff's argument with respect to Dr. Leidal's medical opinion is addressed in the following section.

It may be true that an individual suffering from ADHD exhibits a lack of effort that can be attributed to the disorder. However, an individual could also be perfectly capable of sustained focus, but intentionally choose not to engage for any number of reasons, including a dislike of the school subject matter or preference to socialize with peers, as the ALJ found to be the case here. The evidence in Plaintiff's April 2019 IEP suggests that Plaintiff is capable of focusing when removed from his peer groups and working with teachers in one-on-one sessions. *See* AR 443, 447. During a February 2019 Woodcock Johnson exam, which measures a student's ability to complete tasks that would typically be asked of a student in a classroom setting, Plaintiff was "polite and cooperative" and "gave effort and attention to the test." AR 359. As tasks became more difficult, Plaintiff persevered and asked for directions to be repeated or for clarification as necessary. The IEP recommended several accommodations. The observations from the April 2019 IEP were carried forward to his January 2020 IEP. *See generally* AR 391–429. An Evaluation Report from Plaintiff's school district indicated that, with some support and accommodations, Plaintiff is capable of doing his schoolwork and attending class. *See generally* AR 430–69. And Plaintiff's mother attributed his poor school performance in large part to his absenteeism. In the last school quarter before the ALJ's opinion, Plaintiff had 68 absences even though he lives next to the school. AR 14.

The ALJ also noted that Plaintiff's IEP indicated Plaintiff "puts very little effort into his work." AR 14 (internal citations and quotations omitted). Further, Plaintiff's IEP states that he does not "comprehend text on an inferential level due to his lack of effort, some of which was by choice and some of which was his not going beyond the text to

9

look deeper to make judgments and explain his reasons for the answers that he provides." AR 14.

The ALJ found it significant that the consultative psychologist, Dr. Leidal, found that Plaintiff's inabilities "were over exaggerated through the evaluation" and Plaintiff gave "little to no effort on tasks and appeared to be intentionally answering questions incorrectly." AR 13 (internal citations and quotations omitted). Dr. Leidal also noted that Plaintiff behaved in an aloof, withdrawn, and resistant manner and "clearly put fourth [*sic*] very little effort in anything. He answered some questions but frequently just mumbled 'I don't know.'" Dr. Leidal found that Plaintiff's language abilities were below average only due to "lack of motivation and evasiveness." AR 16–17. Plaintiff's full scale IQ was indicated to be 40, but Dr. Leidal noted that the claimant's motivation was "very poor," and the results of the test were unreliable due to "poor effort and disinterest." The ALJ found Dr. Leidal's opinion persuasive because it was consistent with school reports and Plaintiff's mother's reports that Plaintiff had a significant lack of interest and motivation to perform in school.[4]

Dr. Ziskind also noted Plaintiff's lack of effort. Dr. Ziskind explained that Plaintiff's inabilities on the Wechsler Intelligence Scale were "overexaggerated throughout the evaluation" and that he "gave little to no effort on tasks and appeared to be intentionally answering questions incorrectly." AR 492. She was unable to make a diagnosis for Plaintiff due to "suboptimal effort" and noted that, though there were reported behavioral problems, "it was unclear as to what was being overemphasized and exaggerated." AR 493–94.

---

[4] Plaintiff does not challenge the ALJ's finding that Dr. Leidal's opinion was persuasive.

Thus, both consultative examiners found that Plaintiff was intentionally sabotaging his performance during their evaluations. The Court will not equate "lack of effort" with marked impairments of Paragraph B categories or the six functional equivalency domains, especially in light of the substantial evidence suggesting that Plaintiff was intentionally sabotaging his tests and malingering, and the absence of medical opinions attributing such behavior to the severity of Plaintiff's impairments.

## II. The ALJ properly considered Dr. Leidal's medical opinion.

Plaintiff argues that, though the ALJ found Dr. Leidal's opinion persuasive, he failed to adopt Dr. Leidal's findings that Plaintiff has marked limitations in two of the Paragraph B areas of mental functioning. And, had the ALJ properly considered Dr. Leidal's opinion, he would have found Plaintiff disabled. Defendant, however, argues that there is no discrepancy between Dr. Leidal's opinion and the ALJ's findings.

Dr. Leidal opined that Plaintiff suffers from unspecified disruptive, impulse control, and conduct disorder, as well as intermittent explosive disorder. He explained:

1. The claimant's ability to acquire and use information relative to the function of typically-developing children the same age is mildly impaired. The claimant's language, vocabulary and ability to communicate during the examination were mildly impaired. Understanding oral instructions was not impaired. The ability to understand and retain simple information on this exam seemed mildly impaired.

2. The claimant's ability to attend to tasks relative to the functioning of typically developing children the same age is mildly impaired to moderately impaired and most due to his lack of interest. [Plaintiff] is not hyperactive and claims he had not taken his medication. The ability to complete the tasks on this exam, including mental status, was very poor due to poor motivation and poor effort.

3. The claimant's ability to interact and relate to others relative to functioning of typically-developing children of the same age seems at least moderately impaired. [Plaintiff] lacks cooperation and is not interested in performing on examination. Conversation was very minimal. He was

11

extremely quiet and reluctant. [Plaintiff] showed no interest in testing and gave up easily by saying "IDK" to most items. Social relations with others, such as family and peers has been at least moderately impaired. Disruptive behaviors, such as defiance, direct oppositionalism, negative reaction to direction or redirection appear markedly impaired.

4. The claimant's adaptive ability in the area of self-care relative to the functioning of typically developing children of the same age is mildly impaired. Awareness and ability to communicate simple wants and needs to others is mildly impaired. Behaviors such as temper outburst, signs of frustration are markedly impaired. He apparently has [not] physically harmed anyone, yet, but is quick to explode with his temper.

AR. 482–83.

Plaintiff argues that Dr. Leidal's statements of marked limitation with respect to disruptive behavior and signs of frustration indicate marked limitations in the domains of ability to attend and complete tasks, as well as well as ability to interact and relate with others. *See* Dkt. #10 at 18. At oral argument, Plaintiff also suggested that it could indicate a marked limitation in the area of adapting and managing oneself.

 The ALJ did not ignore Dr. Leidal's findings. Instead, he attributed both marked limitations to be related to behavior or interacting with others. The ALJ noted Dr. Leidal found "markedly impaired disruptive behaviors, including defiance, direct oppositionalism, and negative reaction to direction or redirection. Likewise marked impaired was noted regarding behavior such as reported temper outbursts and signs of frustration." AR 17.

Under the circumstances of this case, the Court cannot adopt Plaintiff's interpretation of Dr. Leidal's findings. This is a situation where Dr. Leidal's opinion might be subject to several interpretations.  After all, even Plaintiff suggests two possible interpretations. Moreover, the ALJ's findings are supported by more than substantial

evidence as they are consistent with the other medical opinions in this case—all of which were found to be persuasive.

For example, Dr. Hanze, the State agency psychologist, considered the six domains required by the regulation. He found that Plaintiff had a less than marked impairment in acquiring and using information; a less than marked impairment in attending and completing tasks; a marked impairment interacting and relating with others; no limitation in caring for oneself; and no limitation in physical well-being. AR 105–06.

In making his determination, Dr. Hanze reviewed Dr. Leidal's medical opinion and found that Dr. Leidal's limitations were fully consistent with the objective medical evidence in the file. AR. 109. Dr. Hanze noted that there were no medical opinions that were more restrictive than his findings. AR. 109. Thus, Dr. Hanze interpreted Dr. Leidal's opinion as containing only marked impairment, and the ALJ was entitled to adopt this opinion. Further, no other medical opinion suggested a marked limitation in one more than one of the Paragraph B criteria when evaluating whether a Plaintiff's symptoms meet a listing, or the six domains considered when evaluating functional equivalence with a listing.

Ultimately, whether another interpretation of Dr. Leidal's opinion is possible is irrelevant under substantial evidence review. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de

novo." (citation and quotation omitted)); *Abdelmeged v. Colvin*, 2015 WL 5047645, at *6 (D. Colo. Aug. 26, 2015) ("The mere fact that there may be two permissible views of the evidence . . . is not indicative that the ALJ's choice between them was in error.") (citations omitted). Accordingly, the Court will not disturb the ALJ's findings on this basis.

Accordingly, the Commissioner's decision is **AFFIRMED.** Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 15th day of June, 2023

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge